Filed 10/30/25  P. v. Sedlar CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C100120 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE016072) |
| v. | |
| ROBERT WAYNE SEDLAR, | |
| Defendant and Appellant. | |

A jury convicted defendant Robert Wayne Sedlar of dozens of financial crimes arising from a conspiracy to defraud homeowners facing foreclosure.  The jury found that defendant committed theft in an amount over $100,000 and that he committed two or more related felonies resulting in a loss of over $500,000.  The trial court sentenced defendant to an aggregate determinate prison term of 25 years four months.

Defendant now contends (1) the trial court should have granted defendant's motion to substitute appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*), and (2) the trial court erred in imposing a $100 infraction fine after defendant failed to submit a firearm relinquishment form. The People concede the latter issue.

Regarding the *Marsden* contention, we conclude the trial court did not abuse its discretion in denying the motion. As for the challenge to the infraction fine, we will modify the judgment to strike the fine and affirm the judgment as modified.

BACKGROUND

Defendant and another man, Steven Rogers, created Grand View Financial (Grand View), purportedly as a real estate holding and investment company. But they used the entity to defraud homeowners facing foreclosure. Defendant represented that he would use a program approved by the Department of Justice to help save a home. If the homeowner deeded the home to Grand View, Grand View could file for bankruptcy. Defendant said the bankruptcy would halt the foreclosure and allow Grand View to challenge defective liens on the property. The former homeowner would also pay money to Grand View to fund efforts to save the home and as rent so the former homeowner could continue living in the home. Victims were told that at the end of the process, they could buy out Grand View's interest in the property and obtain free and clear title.

The Grand View scheme was not approved by the Department of Justice and it was not successful in stripping liens from properties. Moreover, unbeknownst to the victims, defendant and Rogers recorded fraudulent deeds of trust against the properties in the names of various shell companies created by Rogers. The apparent purpose was to cloud titles and create confusion. The victims ultimately lost their homes and the money they paid to Grand View.

The jury found defendant guilty of one count of conspiracy, 17 counts of committing a prohibited act by a foreclosure consultant, 63 counts of offering a false

or forged instrument, 15 counts of grand theft by false pretenses, and four counts of theft from an elder or dependent adult.

Defendant then filed a motion to substitute his counsel under *Marsden*. In support of the motion, defendant submitted a form declaration, checking every box identifying a possible ground for complaint. At the *Marsden* hearing, the trial court inquired into each of defendant's asserted complaints.

Regarding a complaint that defense counsel failed to confer with defendant concerning preparation of the defense and failed to communicate in general, defendant stated that he first met with defense counsel in December 2019, and since then, defendant had been asking defense counsel to meet with him so defendant could teach him real estate law. According to defendant, defense counsel said he "didn't give a fuck" and did not have time for that.[1] Defendant complained that he "never received a single page of discovery until after the trial" and had "never seen any plea deal . . . in writing." Defendant added: "I've never seen anything presented to me in writing from [defense counsel]."

As for a complaint that defense counsel failed to subpoena witnesses or present evidence favorable to the defense, defendant faulted defense counsel for not offering any defense exhibits. According to defendant, he wanted defense counsel to subpoena the United States Trustee, his bankruptcy attorney, and various county assessors, but defense counsel told him "he didn't have time" and "didn't want to hear it." Defendant claimed the Trustee would have legitimized Grand View's efforts, the bankruptcy attorney would have explained the Grand View strategy, and the assessors would have

---

[1] The record indicates defense counsel may not have been a stranger to profanity. During argument outside the presence of the jury regarding exhibits, the prosecutor asserted an objection and defense counsel muttered, " 'F you.' " When the prosecutor informed the trial court that defense counsel said that to her, defense counsel responded: "No, I muttered that to myself." The trial court admonished defense counsel.

shown there was no loss of value to the former homeowners. Defendant said numerous witnesses contacted defense counsel asking to testify, but counsel refused to respond.

On the complaint that defense counsel failed to investigate, defendant said he repeatedly requested an investigator but defense counsel said there was insufficient money to retain one.

In support of a complaint that defense counsel failed to prepare and file motions, defendant claimed he wrote everything necessary for a motion to dismiss, but as far as he knew defense counsel never read it. Defendant said he requested other motions that were never filed.

Regarding a complaint that defense counsel failed to declare a conflict, defendant said he and defense counsel were at odds from the beginning. Defendant stated: "I keep trying to tell him he needs to learn. He's basically a homicide defense attorney . . . but he doesn't know anything about real estate or fraud case[s]." According to defendant, when he would question defense counsel on his understanding of real estate law, counsel would reply, " 'When you calm down we can talk again.' " Defendant said he repeatedly told defense counsel he did not understand the contracts, to which counsel would respond: " 'I don't have time for this shit.' "

After hearing defendant's complaints, the trial court heard from defense counsel. Counsel began by stating his background and experience, including handling over 2,300 felony cases and over 50 jury trials. Counsel explained that he was appointed to represent defendant in 2019, after which he received a terabyte of discovery on a hard drive, which "took years to get through." Counsel reviewed the discovery and met with defendant many times. They also spoke by phone. Counsel stated he provided defendant with discovery. He said they met almost daily during trial, discussing witness testimony and plea offers. Defendant was adamant about his innocence and did not want to resolve the case by plea. Although defense counsel informed defendant he would not file motions for the sake of filing motions, he did file many in limine motions, and many of

those were granted. Defendant appeared to be very happy with the way things were going at trial and had not expressed the complaints asserted in the *Marsden* motion.

Defense counsel said he put together an excellent defense that addressed all of the charges and asserted defendant's position that he did not do anything wrong. Counsel explained that defendant makes statements as though they are fact, but the information defendant provided to him rarely checked out. Nevertheless, defense counsel was successful in persuading the prosecutor to drop over a dozen counts, and in convincing the jury to find defendant not guilty on a few others. Counsel said it was a complex trial, and the defense was presented in accordance with defendant's directions, providing the jury with defendant's vision for what he had been doing.

The trial court asked defense counsel to address defendant's complaint that he never took the time to learn real estate law. Counsel said he spent nearly three years preparing the case, including researching real estate law. He said it was not always possible to do what defendant wanted because defendant had an incorrect view of the law, whether he believed it or not.

The trial court asked defense counsel why he did not file a motion to dismiss for insufficient evidence. Counsel responded, "because the evidence was overwhelming." The trial court asked whether "there were witnesses who volunteered to testify for the defense that [counsel] did not call." Counsel answered: "I considered calling every one of the witnesses that [defendant] demanded," but "the people that worked on his case were not helpful to the defense, and it was a . . . strategic choice to limit the defense to [defendant's testimony]." Asked about the United States Trustee, counsel said defendant's belief that the Trustee would legitimize defendant's scheme was mistaken. In counsel's estimation, the Trustee would not have been a helpful witness. Counsel stated he did not subpoena defendant's bankruptcy attorney for the same reason.

As for hiring an investigator to pull deeds and other documents, defense counsel explained that he looked at the documents, and none supported defendant's assertion that

5

the properties had defective liens. However, counsel said all appropriate documents that could be used in the defense were admitted in evidence.

Defense counsel denied that there was an irreconcilable conflict between him and defendant. He also denied telling defendant that he "didn't give a fuck" about his case, or that he "didn't have time," or that "there was no money for an investigator."

After defendant responded to defense counsel's comments, the trial court denied the *Marsden* motion. The trial court found that defense counsel provided adequate, effective, and professional representation and would continue to do so. The trial court said defense counsel presented defendant's theory of the real estate transactions to the jury, defendant further testified and explained the theory to the jury, and the jury understood the theory; but the jury "didn't buy it." After summarizing defense counsel's efforts on defendant's behalf, the trial court described defendant's fraudulent scheme, noting that defendant had little credibility.

## DISCUSSION

### I

Defendant contends the trial court should have granted his *Marsden* motion.

"Criminal defendants are entitled to competent representation. If a defendant cannot afford to hire an attorney, one must be appointed for the defendant." (*People v. Smith* (1993) 6 Cal.4th 684, 690 (*Smith*).) However, "a defendant has no absolute right to more than one appointed attorney." (*Marsden, supra*, 2 Cal.3d at p. 123.) "[T]he decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court." (*Ibid*.) In exercising that discretion, "the trial court must give the defendant the opportunity to explain the reasons for desiring a new attorney. [Citation.] '[T]he trial court cannot thoughtfully exercise its discretion in this matter without listening to [the defendant's] reasons for requesting a change of attorneys.' [Citation.] Accordingly, '[w]hen a defendant moves for substitution of appointed counsel, the court must consider any

6

specific examples of counsel's inadequate representation that the defendant wishes to enumerate. Thereafter, substitution is a matter of judicial discretion. Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel. [Citations.]' [Citation.]" (*Smith,* at pp. 690-691.)

Here, as in *Smith*, the trial court "fully allowed defendant to state his complaints, then carefully inquired into them. Defense counsel responded point by point." (*Smith, supra*, 6 Cal.4th at p. 696.) Defendant acknowledges that "the trial court did appear to conduct an adequate inquiry into [his] complaint[s]." Nevertheless, defendant asserts that the trial court's inquiry "only demonstrated the need to provide new court-appointed counsel." We disagree.

Defendant argues defense counsel "caused a total breakdown in the attorney-client relationship." As evidence of the purported breakdown, defendant cites his assertions that defense counsel said he "didn't give a fuck, and that he doesn't have time for this" whenever defendant would attempt to "teach [counsel] the laws that govern real estate." Defendant further argues that "[h]owever damaged [his] credibility may have been, defense counsel's credibility was worse." But it was for the trial court to assess relative credibility and determine the weight of the information presented, and the trial court was not required to accept defendant's version of events. (*Smith, supra*, 6 Cal.4th at pp. 696-697.) Moreover, even if the trial court had credited defendant's assertion that defense counsel used profanity during some of their interactions, the fact that "some heated words were spoken" by counsel "does not require a substitution of counsel absent an irreconcilable conflict." (*Smith,* at p. 697.) Defendant has not persuaded us that an irreconcilable conflict existed.

The trial court did not abuse its discretion in denying the *Marsden* motion.

## II

Defendant also claims the trial court erred by imposing a $100 infraction fine after he failed to submit a firearm relinquishment form.

Penal Code section 29810 requires persons convicted of a felony to relinquish all firearms within a prescribed period of time following the conviction. (Pen. Code, §§ 29810, subd. (a); 29800, subd. (a).) "Prior to final disposition or sentencing in the case, the court shall confirm that the defendant has relinquished all firearms as required, and that the court has received a completed Prohibited Persons Relinquishment Form . . . ." (Pen. Code, § 29810, subd. (c)(4).) "Failure by a defendant to timely file the completed Prohibited Persons Relinquishment Form with the assigned probation officer shall constitute an infraction punishable by a fine not exceeding one hundred dollars ($100)." (*Id*., subd. (c)(5).)

" 'Due process of law requires that criminal prosecutions be instituted through the regular processes of law. These regular processes include the requirement that the institution of any criminal proceeding be authorized and approved by the district attorney.' [Citation.]" (*People v. Villatoro* (2020) 44 Cal.App.5th 365, 369.) In *Villatoro*, based on nearly identical facts, the appellate court held that the trial court had no authority to charge the defendant with an infraction, find a violation, and impose an infraction fine, where "the district attorney did not charge or approve the charging of an infraction." (*Ibid*.)

Here, the People did not charge or approve the charging of an infraction for failure to file a completed Prohibited Persons Relinquishment Form. Nevertheless, the trial court found that defendant did not file the required form and imposed the $100 fine. As the People concede, "[t]his was beyond its power to do." We will modify the judgment to strike the fine.

DISPOSITION

The judgment is modified to strike the $100 infraction fine, and the judgment is affirmed as modified. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified and to forward it to the Department of Corrections and Rehabilitation.

        /S/
MAURO, Acting P. J.

We concur:

    /S/
BOULWARE EURIE, J.

    /S/
FEINBERG, J.